IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS A. BIANCHI, JOYCE A. SYNEK, RONALD J. SALGADO and MICHAEL J. McCLEARY, | ) ) ) | |
| | ) | Case No.: 12-cv-00364 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge: Robert M. Dow, Jr. |
| | ) | |
| HENRY C. TONIGAN, III, THOMAS K. McQUEEN, DANIEL JERGER, ROBERT SCIGALSKI, JAMES REILLY, PATRICK HANRETTY, RICHARD STILLING, QUEST CONSULTANTS INTERNATIONAL, LIMITED, an Illinois Corporation, KELLEHER & BUCKLEY, LLC, an Illinois Limited Liability Company, and UNKNOWN CONSPIRATORS, | ) ) ) ) ) ) ) ) ) ) | Magistrate Judge: Mary Rowland |
| Defendants. | | |

---

**CORRECTED REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

---

Steven M. Puiszis, Esq.
Matthew R. Henderson, Esq.
Starr M. Rayford, Esq.
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
spuiszis@hinshawlaw.com
mhenderson@hinshawlaw.com

# TABLES

TABLE OF CONTENTS ..........................................................................................................i

TABLE OF AUTHORITIES ....................................................................................................ii

# TABLE OF CONTENTS

TABLES ................................................................................................................................. I

TABLE OF CONTENTS ......................................................................................................... I

I.    INTRODUCTION. .......................................................................................................1

    A.    Plaintiffs' Concessions Remove Certain Issues from Contention. ...................1

    B.    Plaintiffs' Admission Demonstrates They Have No Viable Due Process Claim.........................................................................................................................3

    C.    Plaintiffs' Failure to Respond to Certain Grounds for Dismissal Forfeits Any Opposing Argument. .................................................................................3

II.    PLAINTIFFS' SECOND AMENDED COMPLAINT IS NOT MATERIALLY DIFFERENT THAN THEIR FIRST AMENDED COMPLAINT WHICH WAS DISMISSED BY THIS COURT..........................................................................................4

III.    MCQUEEN WAS VALIDLY APPOINTED A SPECIAL STATE'S ATTORNEY. ...........5

    A.    Any Attorney Appointed for Any Reason Pursuant to §5/3-9008 Possesses the Powers of the Regularly Elected State's Attorney.......................................5

    B.    Plaintiffs Conceded McQueen was Properly Appointed in the Underlying Criminal Proceedings. ........................................................................................6

    C.    Plaintiffs' Arguments Were Raised, Considered and Rejected in the Underlying Criminal Proceedings.................................................................8

    D.    Judge Graham's Third Appointment Order Was Not Precipitated by Fraud.............9

    E.    Rule 11(b)(3) Does Not Displace the Pleading Requirements of Rule 8. ...................10

    F.    There is No Right to Judicial Oversight or Review of the Decision to Prosecute.......................................................................................................11

IV.    PLAINTIFFS FAIL TO DEMONSTRATE ANY FACTUAL CONNECTION BETWEEN MCQUEEN AND BIANCHI'S POLITICAL ENEMIES. ...............................11

V.    ABSOLUTE IMMUNITY BARS PLAINTIFFS' CLAIMS. ....................................................12

VI.    QUALIFIED IMMUNITY BARS PLAINTIFFS' CLAIMS.....................................................15

    A.    Plaintiffs Have No Viable Fourth Amendment Claim ...................................15

        1.    Probable Cause Not Negated By Affirmative Defenses...................16

        2.    Grand Jury Indictment Establishes Probable Cause. .......................17

    B.    Plaintiffs Have No Viable Due Process Claim..................................................17

            1.    Seventh Circuit Has Rejected Attempts to Bring Hybrid Due Process
                  Claims. ..................................................................................................17

            2.    *Whitlock* is Inapplicable to Plaintiffs' Due Process Claims. .............18

            3.    Plaintiffs' Acquittal in the Underling Criminal Proceedings Precludes
                  Any §1983 Claim Based on an Alleged *Brady* Violation. ...................19

    C.    Plaintiffs Have No Viable Retaliatory Prosecution Claims. ...........................22

VII.    ASSIGNMENT BARS STATE AND FEDERAL CLAIMS. ...................................23

VIII.    PLAINTIFFS' DEFAMATION CLAIMS ARE BARRED BY COMMON-LAW
      PRIVILEGE..................................................................................................................24

IX.    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED PURSUANT
      TO EITHER COMMON-LAW PROSECUTORIAL IMMUNITY LAW OR
      STATE SOVEREIGN IMMUNITY. ..........................................................................26

# TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE(S)**

*Abu-Shawish, v. U.S.,*
    2011 WL 3687618 (E.D. Wisc. Aug. 22, 2011)....................................................................15

*Albright v. Oliver,*
    510 U.S. 266 (1994)..............................................................................................................11

*Alexander v. McKinney,*
    692 F.3d 553 (7th Cir. 2012)...........................................................................2, 17, 18, 20

*Andrews v. Burge,*
    660 F.Supp.2d 868 (N.D. Ill. 2009) ...................................................................................14

*Avila v. Pappas,*
    591 F.3d 552 (7th Cir .2009) ................................................................................................2

*Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Commission,*
    377 F.3d 682 (7th Cir. 2004)..............................................................................................16

*Bianchi v. McQueen,*
    2013 WL 140915 (N.D. Ill. Jan 11, 2013) ...........................................................................4

*Borsellino v. Goldman Sachs Group, Inc.,*
    477 F.3d 502 (7th Cir. 2007)................................................................................................9

*Brooks v. City of Chicago,*
    564 F.3d 830 (7th Cir. 2009)..........................................................................................3, 15

*Brooks v. Walls,*
    279 F.3d 518 (7th Cir. 2004)............................................................................21

*Buckley v. Fitzsimmons,*
    509 U.S. 259 (1993) ........................................................................ 12, 13, 14

*Caine v. Burge,*
    897 F.Supp.2d 714 (N.D. Ill. 2012) ...............................................................21

*Carvajal v. Dominguez,*
    542 F.3d 561 (7th Cir. 2008)..........................................................................19

*Certain Taxpayers v. Sheahen,*
    45 Ill.2d 75, 256 N.E.2d 758 (1970) ...............................................................6

*Christman v. Hanrahan,*
    500 F.2d 65 (7th Cir. 1994) ............................................................................19

*Doherty v. City of Chicago,*
    75 F.3d 318 (7th Cir. 1996)............................................................................22

*Droste v. Kerner,*
    34 Ill. 2d 495, 217 N.E.2d 73 (1996) ...............................................................6

*Elan Microelectronics Corp. v. Apple, Inc.,*
    2009 WL 2972374 (N.D. Cal. Sept. 14, 2009)...............................................10

*Fields v Wharrie,*
    672 F.3d 505 (7th Cir. 2012)..............................................................14, 20, 21

*Flores v. Satz,*
    137 F.3d 1275 (11th Cir.1998) .......................................................................19

*Fox v. Hayes,*
    600 F.3d 819 (7th Cir. 2010) ..........................................................................17

*Gerstein v. Pugh,*
    420 U.S. 103 (1975) ........................................................................................11

*Grimes v. Saikley,*
    388 Ill.App.3d 802, 904 N.E.2d 183 (4th Dist. 2009)....................................24

*Hostrop v. Board of Jr. College Dist. No. 515,*
    523 F.2d 569 (7th Cir. 1975)..............................................................................2

*Humphrey v. Staszak,*
    148 F.3d 719 (7th Cir. 1998)..........................................................................16

*Imbler v. Pachtman*, 424 U.S. 409 (7th Cir. 1976) ...........................................................14

*Juriss v. McGowan*,
    957 F.2d 345 (7th Cir. 1992)................................................................................15

*Keller v. United States*,
    58 F.3d 1194 (7th Cir.1995)...............................................................................1, 7

*Klehm v. Grecian Chalet, Ltd.*,
    164 Ill.App.3d 610, 518 N.E.2d 187 (1st Dist. 1987) ...................................23

*Kleinwort Benson N. Am., Inc. v. Quantum Fin. Servs., Inc.*,
    181 Ill.2d 214, 692 N.E.2d 269 (1998) ...........................................................23

*In re Lefkas Gen. Partners*,
    153 B.R. 804 (N.D.Ill.1993) .................................................................................1

*Lekas v. Briley*,
    405 F.3d 602 (7th Cir. 2005)................................................................................4

*McCann v. Mangialardi*,
    337 F.3d 782 (7th Cir. 2003)..............................................................................17

*McCaskill v. SCI Mgmt. Corp., Inc.*,
    298 F.3d 677 (7th Cir. 2002)................................................................................1

*McCune v. City of Grand Rapids*,
    842 F.2d 903 (6th Cir. 1988)..............................................................................20

*Morgan v. Gertz*,
    166 F.3d 1307 (10th Cir. 1999) .........................................................................20

*Mosley v. City of Chicago*,
    614 F.3d 391 (7th Cir. 2010)..............................................................................21

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)...............................................................................................8

*Park Manor Ltd. v. U.S. Dep't of Health & Human Servs.*,
    495 F.3d 433 (7th Cir. 2007)..............................................................................17

*Ray v. Maher*,
    662 F.3d 770 (7th Cir. 2011)..............................................................................23

*Rehberg v. Paulk*,
    132 S.Ct. 1497 (2012).....................................................................................12, 13

*Sands v. McCormack*,
    502 F.3d 263 (3d Cir. 2007)...............................................................................16

*In re Special Prosecutor,*
 2012 WL 6969007 (Ill. App. Ct. Sept. 25, 2012).................................................................7

*Stoller v. Exchange National Bank of Chicago,*
 199 Ill.App.3d 674, 557 N.E.2d 438 (1st Dist 1990) ...............................................23, 24

*Swearnigan-El v. Cook County Sheriff's Dept.,*
 602 F.3d 852 ...................................................................................................................17

*United States v. Ron Pair Enterprises, Inc.,*
 489 U.S. 235 (1989)..........................................................................................................6

*Van de Kamp v. Goldstein,*
 555 U.S. 335 (2009)........................................................................................................12

*Wallace v. Kato,*
 549 U.S. 384 (2007)........................................................................................................15

*Wallace v. Kato,*
 explained.........................................................................................................................15

*Whitlock v. Bruggeman,*
 682 F.3d 567 (7th Cir. 2012)......................................................................................17, 18

## STATUTES

55 ILCS 5/3-9008 ......................................................................................................5, 10, 11

## OTHER AUTHORITIES

Seventh Circuit Rule 40(e) ..................................................................................................21

Rule 3.8 of the Illinois Rules of Professional Conduct .......................................................25

Rule 8.........................................................................................................................9, 10

Rule 9(b) ...............................................................................................................................9

Rule 11(b)(3) ................................................................................................................10, 11

Rule 12(b)(6) ........................................................................................................................3

Rule 23..................................................................................................................................7

Defendant, THOMAS K. McQUEEN ("McQueen"), by his attorneys, Steven M. Puiszis and Matthew R. Henderson of Hinshaw & Culbertson LLP, respectfully submits this Reply Brief in support of his Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC").

## I.  INTRODUCTION.

### A.  Plaintiffs' Concessions Remove Certain Issues from Contention.

Plaintiffs' Response to McQueen's Motion to Dismiss provides valuable insight into the limits of their claims.  Plaintiffs explicitly state that they are not seeking to hold McQueen liable for any of the following activities:

- Prosecuting the Plaintiffs without probable cause;

- Reviewing witness statements;

- Interviewing witnesses prior to their testimony before the grand jury or at trial; or

- Presenting false testimony before the grand jury.

Response at 18.  Plaintiffs' statement is "deliberate, clear and unequivocal," and because it was made in writing in a formal brief filed with this Court it is binding upon the plaintiffs.  *See, e.g.*, *McCaskill v. SCI Mgmt. Corp., Inc.*, 298 F.3d 677, 680 (7th Cir. 2002) (holding a "verbal admission by SCI's counsel at oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings") (citing *Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir.1997)); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir.1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal."); *In re Lefkas Gen. Partners*, 153 B.R. 804 (N.D.Ill.1993) (Judicial admissions are "any 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings."). Plaintiffs' concession "guts" their purported case against McQueen for several reasons.

First, by conceding that they do not seek to hold McQueen liable for allegedly: (a) prosecuting the plaintiffs without probable cause, (b) reviewing witness statements, (c) interviewing witnesses prior to their testimony before the grand jury or trial, and (d) for allegedly presenting false testimony before the grand jury, plaintiffs have effectively withdrawn those assertions from their SAC and they need not be considered by the Court when ruling on this motion.[1] In addition to the authorities cited immediately above, see *Alexander v. McKinney*, 692 F.3d 553, 555 n.1 (7th Cir. 2012) ("Because McKinney concedes in his reply brief that he is not entitled to absolute immunity, we do not reach that issue.").

Thus, for instance, plaintiffs complain about an October 21, 2010 interview of Peter Austin allegedly conducted by McQueen and Stilling (Ex. A, ¶62). Plaintiffs allege that McQueen presented false testimony regarding this interview to the grand jury the next day, on October 22, 2010 (Ex. A, ¶63). However, in light of plaintiffs' concessions, McQueen cannot be liable for allegedly being present for, or for allegedly interviewing Austin, or for purportedly presenting allegedly false testimony about that interview to the grand jury.

Additionally, §1983 only authorizes a recovery for the violation of a constitutional right and not for the conspiracy itself. *See, e.g., Hostrop v. Board of Jr. College Dist. No. 515*, 523 F.2d 569, 576 (7th Cir. 1975); *Avila v. Pappas*, 591 F.3d 552, 554, (7th Cir .2009) ("one cannot violate the Constitution by conspiring to commit acts that don't violate the Constitution"). Here, because each count of Plaintiffs' SAC includes a conspiracy allegation, with the exception of Count XV (Ex. A, ¶¶ 124, 130, 136, 141, 146, 152, 158, 162, 169, 176, 182, 187, 192, 197), Plaintiffs' concessions also withdraw any claim that McQueen purportedly conspired with others to allegedly prosecute the plaintiffs without probable cause, or conspired to present false testimony to the grand jury, etc.

---

[1]    In light of Plaintiffs' concession that they do not seek to subject McQueen to liability on these issues, the Court should disregard the allegations of Plaintiffs' SAC in paragraphs 28, 34, 47-48, 66, 75, 86, 90-92, 97-98, 122, 128, 134, 155, 160 and 174.

**B.      Plaintiffs' Admission Demonstrates They Have No Viable Due Process Claim.**

Plaintiffs argue at page 18 of their Response that their "causes of action" against McQueen are based on his allegedly fabricating witness statements, manufacturing evidence to inculpate them in crimes they supposedly did not commit and concealing exculpatory evidence. That admission, however, helps to bury Plaintiffs' due process claims because as McQueen explained in Section VII of his opening brief, Dkt. No. 216 at pp. 20-23, the Seventh Circuit has repeatedly affirmed the dismissal of this type of hybrid due process claim.

For instance, *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009), addressed claims that defendants failed to disclose exculpatory evidence, perjured themselves, and submitted false charges and false police reports. Affirming the Rule 12(b)(6) dismissal of plaintiffs' claims, the Seventh Circuit in *Brooks* held that a due process claim cannot be stated by combining what is a Fourth Amendment false arrest claim with a state-law malicious prosecution action into a hybrid due process claim. *Id.* *Brooks* explained that a §1983 claim asserting that criminal proceedings were instituted based on false testimony or evidence essentially is a claim for "malicious prosecution rather than a due process violation." *Id.* For further discussion of this issue, see Section VI-B of this reply.

**C.      Plaintiffs' Failure to Respond to Certain Grounds for Dismissal Forfeits Any Opposing Argument.**

Plaintiffs failed to address several issues raised by McQueen in his Motion to Dismiss their SAC. Plaintiffs proffered no response to McQueen's argument in Section V of his opening brief that any statements that he made at a press conference did not violate the Constitution. Plaintiffs also offered nothing in opposition to the points raised in Section III-C that absolute immunity bars any claims involving the use of alleged perjured testimony, or to Section III-D that conspiracy allegations do not defeat absolute immunity, or to Section III-E(i) that the Supreme Court's unanimous decision in *Rehberg* eliminates *Buckley's* probable cause threshold for absolute immunity.

The failure to make any response to these points forfeits Plaintiffs' right to oppose these assertions. *See, e.g., Lekas v. Briley*, 405 F.3d 602, 614-15 (7th Cir. 2005) ("Our system of justice is adversarial and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."). The remainder of this Reply addresses the issues and arguments raised in Plaintiffs' Response.

## II. PLAINTIFFS' SECOND AMENDED COMPLAINT IS NOT MATERIALLY DIFFERENT THAN THEIR FIRST AMENDED COMPLAINT WHICH WAS DISMISSED BY THIS COURT.

This Court concluded that absolute and qualified immunity are major roadblocks to any claim against McQueen when it dismissed Plaintiffs' First Amended Complaint ("FAC"). *Bianchi v. McQueen*, 2013 WL 140915, *1 (N.D. Ill. Jan 11, 2013). While the Court gave Plaintiffs the opportunity to replead their claims in an attempt to overcome those obstacles, *Id.*, their latest attempt again fails to do so. Plaintiffs' SAC is essentially a rehash of the assertions made in their FAC, which this Court dismissed. Recognizing that plaintiffs will likely would disagree with this proposition, and to aid the Court in determining what changes were made in Plaintiffs' SAC, McQueen attaches as Exhibit 1 to this Reply, a computer comparison of the allegations made in the FAC with those made in the SAC. The purpose of this comparison is to show the Court that the two pleadings are not materially different. Because their SAC is not significantly or materially different than their FAC, McQueen submits that plaintiffs' SAC should suffer the same fate, but this time the dismissal should be with prejudice.

Plaintiffs' SAC and their Response to McQueen's Motion to Dismiss the SAC both repeatedly make the same conclusory assertions. Apparently Plaintiffs hope that the mere repetition of an argument or a factually unsupported conclusion, will convince this Court to accept that argument or unsupported conclusion. However, an assertion becomes no more factual in nature the

number of times it is repeated. A conclusory allegation that evidence was fabricated, or that exculpatory evidence was withheld does not become any more factual or any less conclusory the fourth or fifth time it is repeated. McQueen submits that once the unsupported conclusory assertions are stripped from Plaintiffs' SAC, it should be dismissed for the reasons explained in his opening brief and in this Reply.

## III. MCQUEEN WAS VALIDLY APPOINTED A SPECIAL STATE'S ATTORNEY.

Plaintiffs once again suggest that McQueen is not entitled to raise absolute immunity because he was not properly appointed (Dkt. No. 227, at 12-15). The allegations made in support of this argument are nothing more than legal conclusions that need not be accepted when ruling on this motion. And as explained below, Plaintiffs' argument is factually and legally wrong.

### A. Any Attorney Appointed for Any Reason Pursuant to §5/3-9008 Possesses the Powers of the Regularly Elected State's Attorney.

Plaintiffs' argument ignores that Judge Gordon Graham appointed both McQueen and Tonigan pursuant to 55 ILCS 5/3-9008. At the time of that appointment, §5/3-9008 provided: "Any attorney appointed for any reason under this Section shall possess all the powers and discharge all the duties of a regularly elected State's attorney under the laws of the State" (emphasis added). Plaintiffs allege in their SAC that McQueen is an attorney, and was "appointed by the Circuit Court of McHenry County" (Ex. A, ¶5). Plaintiffs also attach Judge Graham's appointment order to their SAC, which references §5/3-9008. Thus, the allegations of their SAC establish the validity of McQueen's appointment pursuant to §5/3-9008, and demonstrate that plaintiffs' arguments made in their response brief on this issue are meritless.

Plaintiffs' pages of tortured argument about McQueen only being appointed to "assist" Tonigan ignores that §5/3-9008 itself clearly provides that an appointment "for any reason" vests "any attorney" so appointed with "all of the powers" of a "regularly elected State's attorney," which includes the authority to prosecute. Plaintiffs admit that McQueen was appointed, but deliberately

ignore the "for any reason" language of §5/3-9008. Nowhere in 55 ILCS 5/3-9008 does it provide that only one attorney may be appointed, or that if two are appointed, only one of the appointees can exercise all of the powers of the regularly elected State's attorney.[2]

Plaintiffs' argument about McQueen's lack of authority would require this Court to either read into the statute a limitation that is not expressed therein, or graft an exception onto the statute that does not exist. Rules of statutory construction reject such an approach. *See, e.g., United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)) (explaining where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms'"); *Certain Taxpayers v. Sheahen*, 45 Ill.2d 75, 84, 256 N.E.2d 758, 764 (1970) ("It is never proper for a court to depart from the plain language of a statute by reading into it exceptions, conditions or limitations"); *Droste v. Kerner*, 34 Ill. 2d 495, 504, 217 N.E.2d 73, 79 (1996)("We will not and cannot inject provisions not found in a statute, however desirable or beneficial they may be."). Thus, Plaintiffs' argument should be rejected.

**B.** **Plaintiffs Conceded McQueen was Properly Appointed in the Underlying Criminal Proceedings.**

Moreover, Plaintiffs' argument contradicts the positions they took in the underlying criminal proceedings. In a Joint Motion to Dismiss Indictment filed in Case Nos. 10 CF 933 and 934, Mr. Bianchi and Ms. Synek acknowledged:

---

[2]    The *Woodall* decision cited by Plaintiffs at page 13 of their Response does not support their argument because it involved an attempt by a State's Attorney to appoint attorneys to Assistant State's Attorney positions in violation of the Counties Code, which empowered the County Board, not the State's Attorney, to determine the number of assistants that could be employed. 333 Ill. App.3d at 1154-55, 777 N.E.2d at 1021. Additionally, the *Woodall* court noted that a "special" prosecutor's role is limited to a "particular case or proceeding," 333 Ill. App.3d at 1153, 777 N.E.2d at 1020, and the purported appointments at issue were not. The court held the appointments were improper because they were not accomplished through a court appointment. 333 Ill. App.3d at 1154, 777 N.E.2d at 1020. Here, McQueen's appointment was accomplished by court order. Plaintiffs' legal argument based on *Woodall* is meritless.

> On September 18, 2009 Judge Gordon Graham granted Dalby's Petition and appointed Henry C. Tonigan, III and Thomas K. McQueen as special prosecutors, pursuant to 55 ILCS 5/3-9008 "to investigate and/or prosecute any and all persons involved relative to the allegations contained in the underlying pleadings filed herein."

*See* Exhibit 2 to this Reply, at ¶6 (emphasis added). A judicial admission is a concession made in a pleading that is binding on the parties making them. *Keller,* 58 F.3d at 1198 n.8. They may not be controverted; they "have the effect of withdrawing a fact from contention." *Id.*

Plaintiffs' assertion that McQueen was not properly appointed also specifically contradicts the court orders entered in the underlying criminal proceedings.[3] For example, an order entered by Judge Gordon Graham on October 1, 2010 (attached as Ex. 3 to this Reply), references a "request of Special State's Attorneys Henry C. Tonigan, III and Thomas K. McQueen, previously appointed in this matter." Judge Joseph McGraw's Memorandum of Decision on plaintiffs' Joint Motion to Dismiss Indictment, provides that on September 18, 2009 Judge Gordon E. Graham appointed Attorney Henry C. Tonigan, III and Thomas K. McQueen Special Prosecutors, and that the initial appointment of Tonigan and McQueen "was in accordance with statutory authority providing for the appointment of a Special Prosecutor." *See* Ex. F to McQueen's Memorandum of Law in Support of his Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No 74-6) at ¶¶ 7, 12. Everyone involved in the underlying criminal proceedings, including the Plaintiffs themselves and their current counsel, recognized that McQueen was properly appointed. As McQueen noted in his briefs involving Plaintiffs' FAC, parties are not permitted to shift positions to suit the exigencies of

---

[3] Plaintiffs argue that McQueen cannot rely on *In re Special Prosecutor*, 2012 WL 6969007 (Ill. App. Ct. Sept. 25, 2012), because it was a Rule 23 decision (Dkt. No. 227, at 13 n.4). Plaintiffs ignore that Rule 23 (e)(1) permits Rule 23 opinions to be cited in support of double jeopardy, *res judicata*, collateral estoppel or law of the case arguments. In light of the judicial admissions made by Plaintiffs' in the underlying criminal cases (discussed in the text above), McQueen properly cited the decision to show that the appellate court viewed him as having been properly appointed under §5/3-9008 because the appellate court would not have approved the payment of his bills if he had not been properly appointed. The decision also demonstrates that Plaintiffs' conclusory assertion in ¶27 about the unlawfulness of McQueen's compensation (Ex. A, ¶27) is not well taken and should be stricken by this Court.

the moment, *see New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001), as Plaintiffs have attempted pertaining to McQueen's appointment.

C.    **Plaintiffs' Arguments Were Raised, Considered and Rejected in the Underlying Criminal Proceedings.**

Plaintiffs once again contend that the special prosecutors' original appointment was limited to investigating Dalby's allegations (Ex. A, ¶¶25-26); that Tonigan and McQueen began an illegal and unauthorized investigation (Ex. A, ¶¶28-29); that Tonigan improperly convinced Judge Graham to expand the scope of the investigation (Ex. A, ¶30-31); that Tonigan and McQueen abused the Grand Jury's subpoena power by improperly issuing subpoenas for documents and witnesses without proper authority (Ex. A, ¶¶49-50); and that the Grand Jury returned an indictment that was not supported by probable cause, about which McQueen was supposedly aware (Ex. A, ¶57-61). Response at pp. 2-3. Each of these arguments were made in the underlying criminal proceedings, and each argument was rejected by Judge Joseph McGraw.

Judge McGraw's January 18, 2011 Memorandum of Decision considered and rejected the suggestion that Judge Graham impermissibly expanded the scope of the special prosecutors' original appointment. Judge McGraw specifically found McQueen's authority to investigate was not limited to the actions of Ms. Dalby during her time as an employee of the McHenry County State's Attorney's Office. *See* Ex. F to McQueen's Memorandum of Law (Dkt. No 74) at ¶¶11-16. After reviewing the indictments and the Grand Jury Transcripts in connection with another Joint Motion to Dismiss the Indictments in Case Nos. 2010 CF 933 and 934, Judge McGraw also rejected the suggestion that there was no evidence connecting Mr. Bianchi and/or Ms. Synek to the offenses charged in those indictments. *See* Ex. H to McQueen's Memorandum of Law (Dkt. No. 74-8) at ¶¶6-8. Plaintiffs offer no reason why these findings in the underlying criminal proceedings should be ignored when ruling on McQueen's Motion to the Dismiss the SAC.

**D.    Judge Graham's Third Appointment Order Was Not Precipitated by Fraud.**

Plaintiffs further argue that McQueen is not entitled to absolute immunity because Judge Graham's third order was the product of fraud, and point to ¶¶ 76-79 of their SAC. However, Plaintiffs' assertions made in those paragraphs are unsupported legal conclusions, which provide no basis to deny absolute immunity. Plaintiffs provide no factual support for those assertions. For instance, plaintiffs complain that McQueen falsely represented himself as a 'Special State's Attorney" (Ex. A, ¶76), yet as noted above McQueen was appointed pursuant to §5/3-9008 rendering Plaintiffs' argument completely meritless.

Federal Rule of Civil Procedure 9(b) provides that averments of fraud must be "stated with particularity." Rule 9(b) applies to claims premised upon an alleged course of fraudulent conduct. *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). Meeting Rule 9(b)'s heightened pleading standard requires "the who, what, when, where, and how." *Id.* It requires the content of the misrepresentation be alleged in detail. *Id.* at 509. Here, Plaintiffs' fraud argument fails to meet Rule 9(b)'s requirements because they fail to explain why they believe the statements were fraudulent. Rule 9(b) requires more than merely listing statements and appending a conclusion to them asserting that they are fraudulent in nature. Some factual basis must be provided so the Court can judge whether the assertion that the statements are fraudulent has any plausibility. Otherwise, Rule 9(b)'s particularity standard would be transmuted into Rule 8. *Id.* Because Plaintiffs fail to provide this Court with any factual basis to judge the plausibility of their conclusion that the statements were fraudulent, their argument should be summarily rejected.

Finally, Plaintiffs' contention that McQueen filed a verified petition containing knowingly false statements regarding Bianchi (Ex. A, ¶84-86) was also presented to, and rejected by Judge McGraw in the underlying criminal proceedings. Attached as Exhibit 2 to this reply is plaintiffs' Joint Motion to Dismiss Indictment, which accuses McQueen of deliberately excluding essential

facts from the petition. *See* Ex. 2, ¶12. Attached as Exhibit 3 is Judge McGraw's order denying that motion. Plaintiffs' contention that the petition is false is their characterization, it is plainly not a fact, and it was previously rejected in the underlying proceeding. Consequently, this argument should be similarly rejected when ruling on McQueen's Motion to Dismiss Plaintiffs' SAC.

## E.    Rule 11(b)(3) Does Not Displace the Pleading Requirements of Rule 8.

Plaintiffs argue that their assertion that there will "likely" be evidentiary support after a reasonable opportunity for further investigation or discovery does not demonstrate a failure to state a claim (Dkt. No. 227, pp.10-11). However, that is a classic straw-man argument, which ignores the principle that Rule 11(b)(3) does not alter Rule 8's pleading threshold. *See, e.g., Elan Microelectronics Corp. v. Apple, Inc.*, 2009 WL 2972374 at *4 (N.D. Cal. Sept. 14, 2009) (explaining Rule 11(b)(3) "does not release a party from the obligation to advance sufficient factual allegations to satisfy Rule 8"). Whether a party has alleged sufficient facts to meet Rule 8's pleading threshold involves a separate inquiry from Rule 11(b)(3). *Id.* Rule 11(b)(3) does not eliminate the need to meet the level of specificity required by *Twombly* and *Iqbal. Id.* Moreover, Rule 11(b)(3) is not a license to make claims without asserting any factual basis.

Indeed, in *Ashcroft v. Iqbal*, the Court noted:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

556 U.S. at 678. Moreover, Plaintiffs' acknowledgement that they were provided 17,000 pages of email communications between McQueen and the Quest Investigators by counsel for Quest, is inconsistent with the invocation of Rule 11(b)(3). And, when this Court examines the context in which the Rule 11 (b)(3) assertions were made (Ex. A., ¶¶50-52, 71, 85, 89, 109, 118), it will see that they are brought as part of Plaintiffs' erroneous suggestion that only Tonigan, and not McQueen, was vested with authority to indict or prosecute under 55 ILCS 5/3-9008. However, as explained in

the preceding section of this Reply, Plaintiffs' argument is based on an erroneous statutory construct, which ignores the fact that once McQueen was appointed under §5/3-9008, he was vested with all of the authority of a regularly-elected State's Attorney. *See* 55 ILCS 5/3-9008 (vesting any attorney appointed pursuant to statute with the "same power and authority" as the elected State's Attorney). Thus, Plaintiffs' attempt to invoke Rule 11(b)(3) is legally irrelevant, and does not obviate the requirement to plead sufficient facts to state a plausible entitlement to relief, which they have once again failed to do.

**F.      There is No Right to Judicial Oversight or Review of the Decision to Prosecute**

Plaintiffs' suggestion that further discovery will "likely" provide evidentiary support for their erroneous argument that Tonigan would not have charged the Plaintiffs runs afoul of the Supreme Court's holdings in *Albright v. Oliver*, 510 U.S. 266 (1994), and *Gerstein v. Pugh*, 420 U.S. 103 (1975). Both *Albright* and *Gerstein* hold that there is no right "to judicial oversight or review of the decision to prosecute." *Albright*, 510 U.S. at 274 (quoting *Gerstein*, 420 U.S. at 118-18). The fact that there is no right to judicial oversight over a decision to prosecute bars Plaintiffs' liability theory and precludes any claim that Tonigan was supposedly bilked into approving indictments that might otherwise not have been brought.

Moreover, even if *Albright* and *Gerstein* did not bar Plaintiffs' liability theory (and they do), given Plaintiffs' concession that they are not claiming McQueen can be held liable for prosecuting them on less than probable cause, and in light of his appointment pursuant to §5/3-9008, Plaintiffs' argument on this issue should be summarily rejected.

**IV.     PLAINTIFFS FAIL TO DEMONSTRATE ANY FACTUAL CONNECTION BETWEEN MCQUEEN AND BIANCHI'S POLITICAL ENEMIES.**

Just as with their Response to McQueen's Motion to Dismiss their FAC, Plaintiffs' once again suggest at page 2 of their latest Response that Mr. Bianchi's political enemies conspired to

remove him from office and succeeded in having a special prosecutor appointed to investigate him. However, conspicuous by its absence in their SAC are any plausible factual allegations that demonstrate either Tonigan, a former Lake County Circuit Judge, or McQueen, a former federal prosecutor, were part of Mr. Bianchi's political adversaries or were in any way involved in the effort to have a special prosecutor appointed. Plaintiffs also fail to allege any facts suggesting that Judge Graham had any political axe to grind with Mr. Bianchi before he appointed Tonigan and McQueen. Finally, Plaintiffs once again fail to allege any facts suggesting that Judge Graham's appointment was not independently made without the influence of any political considerations. Because Plaintiffs made no attempt to tie McQueen to Bianchi's alleged political adversaries in their SAC, their supposition regarding Bianchi's political adversaries in paragraphs 12-15, 22-23, 86 of their SAC add nothing to their claims and should be disregarded when ruling on this motion.

## V. ABSOLUTE IMMUNITY BARS PLAINTIFFS' CLAIMS.

Plaintiffs suggest at page 16 of their Response that the absolute immunity arguments made by McQueen "contradict the functional approach to absolute immunity adopted by the Supreme Court." It is Plaintiffs who refuse to recognize the impact of the Supreme Court's decisions in *Rehberg v. Paulk*, __ U.S. __, 132 S.Ct. 1497 (2012), and *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) on absolute immunity's functional approach.

Following *Rehberg* and *Van de Kamp,* absolute immunity cannot be withheld simply by labeling conduct "administrative" or "investigative" in nature. Rather, application of absolute immunity is determined by the identification of core prosecutorial functions and an objective review of the challenged conduct and its relationship to those core functions. *Van de Kamp* recognized that certain administrative obligations are related to core prosecutorial functions and therefore should be shielded by absolute immunity, 555 U.S. at 344. By unanimously adopting Justice Kennedy's opinion in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), *Rehberg* similarly held that the shield of

absolute immunity cannot be dodged by attacking the prepatory actions that precede the absolute immune conduct. *Rehberg*, 132 S.Ct. at 1506 ("[W]ere it otherwise, 'a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolute immune actions themselves.'") (quoting *Buckley*, 509 U.S. at 283 (Kennedy, J., concurring in part and dissenting in part)).

*Rehberg* and *Van de Kamp* did not overrule the functional approach of absolute immunity as Plaintiffs suggest at page 18 of their Response. Rather, what the Supreme Court did in those opinions was to jettison the use of labels and conclusions when it comes to the application of absolute immunity and replace that with a more nuanced approach which objectively examines the challenged conduct to see if it fits within the core functions of a prosecutor. A party cannot simply label a prosecutor's conduct investigatory and thereby circumvent absolute immunity.

By unanimously adopting Justice Kennedy's opinion in *Buckley*, *Rehberg* also dismantled *Buckley's* probable cause trigger for absolute immunity. Justice Kennedy disagreed with the probable cause trigger because it could be "easily manipulated … by throwing in an allegation that a prosecutor acted without probable cause" as Plaintiffs have attempted in the case at bar. *Buckley*, 509 U.S. at 287. He recognized "[a] prosecutor must consult with a potential trial witness before he places the witness on the stand, and if the witness is a critical one, consultation may be necessary even before the decision whether to indict." *Id.* at 284. It is in light of Justice Kennedy's *Buckley* opinion that *Rehberg* must be read to understand what the Court meant when it said that its recognition of absolute immunity "may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness testimony to support any other §1983 claim concerning the initiation or maintenance of the prosecution." *Rehberg*, 132 S.Ct. at 1506. In the case at bar, by claiming that McQueen is not absolutely immune for conduct outside

the grand jury, Plaintiffs are attempting to reframe their claim and focus on activities that precede grand jury testimony, the very thing that *Rehberg* and Justice Kennedy's *Buckley* decision prohibit.

Because Justice Kennedy's *Buckley* opinion recognized that a prosecutor's consultation may be necessary before there is even a decision to indict, the time when that conduct occurred cannot be a basis to deny absolute immunity when the activities involve a core prosecutorial function. Justice Kennedy recalled that in *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Court had held "obtaining, reviewing, and evaluating" witnesses and their testimony "are a classic function of a prosecutor as an advocate." *Buckley*, 509 U.S. at 284. *See also Andrews v. Burge*, 660 F.Supp.2d 868, 878 (N.D. Ill. 2009) ("[A] prosecutor acts within his core functions when he evaluates the evidence gathered by the police and … should not be deprived of immunity because … he decides to hear what the defendant had to say for himself."). Absolute immunity cannot be denied McQueen for reviewing witness statements, for interviewing witness, or for presenting testimony before the grand jury or at trial, for his charging decisions, or for arguments made before or evidence presented to a judge or the Grand Jury in the underlying criminal proceedings because those actions involve core functions of a prosecutor.

The Supreme Court in *Imbler* rejected any distinction between suppressing exonerating evidence and fabricating evidence for absolute immunity purposes. 424 U.S. at 431 n.34. And the Seventh Circuit in *Fields v. Wharrie*, 672 F.3d 505, 512-14 (7th Cir. 2012), held that a prosecutor is absolutely immune against claims that he failed to produce *Brady* material. McQueen has demonstrated the allegations against him fall within the core functions of a prosecutor, and thus entitle him to absolute immunity. Following *Rehberg*, plaintiffs cannot make an end run around absolute immunity by focusing on the conduct which precedes absolutely immune actions. In light of the foregoing, Plaintiffs' claims against McQueen should be barred by absolute immunity.

14

## VI.    QUALIFIED IMMUNITY BARS PLAINTIFFS' CLAIMS.

Even if McQueen was not absolutely immune, he would enjoy qualified immunity for the §1983 claims against him. As explained below, Plaintiffs have not asserted a viable §1983 claim against him, and therefore cannot overcome the qualified immunity's first hurdle.

### A.    Plaintiffs Have No Viable Fourth Amendment Claim

A brief comparison of the arguments made in Section V of Plaintiffs' current Response, which relates to their false arrest claim, with the arguments made in Plaintiffs' Response filed in opposition to McQueen's Motion to Dismiss their FAC, reveal the arguments are substantially similar. [Compare Dkt. No. 96 at p. 23 with Dkt. No. 227 at p. 24]. Plaintiffs repeat their mistaken argument about *Juriss v. McGowan*, 957 F.2d 345 (7th Cir. 1992), but this time make no attempt to explain away the Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384 (2007), or the Seventh Circuit's decision in *Brooks v. City of Chicago*, 564 F.3d 830 (7th Cir. 2009). This Court has already rejected Plaintiffs' argument once and should reject it again.

Here, Plaintiffs were arrested on warrants issued following their indictment. Thus, because the grand jury's indictment preceded any Fourth Amendment seizure, no false arrest or false imprisonment could have occurred. *See Abu-Shawish, v. U.S.*, 2011 WL 3687618, *6 (E.D. Wisc. Aug. 22, 2011) (holding false arrest and false imprisonment can only occur when a person is held without legal process). The Supreme Court in *Wallace v. Kato* explained that false imprisonment involves a detention without legal process and ends once a person is held "pursuant to such process." 549 U.S. at 389. Thereafter, any remedy for unlawful detention is not based on the absence of legal process, but on the wrongful institution of that process, in other words for malicious prosecution. *Id.* at 390.

Thus, to the extent Plaintiffs have a remedy, it is for the wrongful institution of the legal process, *i.e.* malicious prosecution, not false arrest. *Id.* at 389-90.

Plaintiffs' citation to *Juriss* does not save their claim from dismissal. *Juriss* simply addressed whether the absolute immunity available to a witness bars a false arrest claim. It did not address this issue, and is inapplicable to the legal argument McQueen is raising. Accordingly, Plaintiffs have no viable Fourth Amendment claim to assert; Counts I-III of their SAC should be dismissed.

### 1.    Probable Cause Not Negated By Affirmative Defenses.

Plaintiffs' false arrest and retaliatory prosecution claims also fail for another reason—the existence of probable cause. Plaintiffs do not contest the notion that probable cause is an absolute bar to claims of false arrest under state or federal law. McQueen explained in his opening brief that Amy Dalby's affidavit that was submitted to Judge Graham established probable cause. Plaintiffs suggest at page 32 of their Response that Ms. Dalby's affidavit did not establish probable cause because all of the allegations in her affidavit were barred by the statute of limitations. Notably, Plaintiffs cite no authority for that proposition because none exists.

The statute of limitations is an affirmative defense. *See, e.g., Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Commission*, 377 F.3d 682, 688 (7th Cir. 2004). However, the validity of an affirmative defense is irrelevant to whether probable cause exists for purposes of a §1983 claim. *Humphrey v. Staszak*, 148 F.3d 719, 724 (7th Cir. 1998) (holding "[e]ntrapment is not part of our Fourth Amendment probable-cause-to-arrest analysis" because entrapment "is an affirmative defense to otherwise culpable conduct"); *Sands v. McCormack*, 502 F.3d 263, 269 (3d Cir. 2007) ("Sands' argument is based on the faulty premise that the statute of limitations is a relevant consideration at the time a police officer files charges. The statute of limitations is an affirmative defense that is to be ruled upon by a court of competent jurisdiction."). Accordingly, Plaintiffs' erroneous argument on this issue should be rejected by this Court.

## 2. Grand Jury Indictment Establishes Probable Cause.

The Seventh Circuit in *Park Manor Ltd. v. U.S. Dep't of Health & Human Servs.*, 495 F.3d 433, 437 (7th Cir. 2007), observed: a grand jury's "indictment establishes probable cause." In response, Plaintiffs argue reliance upon *Park* is "completely misplaced" because it is factually dissimilar. Notably, Plaintiffs do not quarrel with the proposition of law because they cannot. *See, e.g. Swearnigan-El v. Cook County Sheriff's Dept.*, 602 F.3d 852. 863 (7th Cir. 2010) (holding "a grand jury indictment is prima facie evidence of probable cause"). Moreover, *Swearnigan-El* reiterated that simply because a person was subsequently acquitted does "not negate the existence of probable cause at the relevant time." *Id.* (citing *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir.1998) ("[P]robable cause does not depend on the witness turning out to have been right.")). Thus, Plaintiffs' argument on this point is meritless. The existence of probable cause bars Plaintiffs' false arrest and retaliatory prosecution claims.

## B. Plaintiffs Have No Viable Due Process Claim.

## 1. Seventh Circuit Has Rejected Attempts to Bring Hybrid Due Process Claims.

Plaintiffs' due process claims in Counts IV and V should be rejected for multiple reasons. Beginning with its decision in *McCann v. Mangialardi*, 337 F.3d 782 (7th Cir. 2003), the Seventh Circuit has consistently rejected due process claims based on allegations that one or more defendants deliberately created false evidence and failed to disclose exculpatory evidence. The Seventh Circuit in *McCann* rejected that claim "because it [was] nothing more than a recast of [plaintiff's] Fourth Amendment claim in the guise of a substantive (rather than procedural) due process violation." *Id.* at 786. *See also Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010); *McKinney*, 692 F.3d at 557. Rather than

making any response to these decisions, Plaintiffs simply ignore them and attempt to rest their claim on *Whitlock v. Bruggeman*, but as explained below, *Whitlock* is inapplicable.

## 2. *Whitlock* is Inapplicable to Plaintiffs' Due Process Claims.

Plaintiffs attempt to base their due process claims on the Seventh Circuit's decision in *Whitlock v. Bruggeman*, 682 F.3d 567 (7th Cir. 2012). Response at 27. However, *Whitlock* is inapplicable to their claims. The Seventh Circuit in *Whitlock* specifically explained that a party asserting this type of claim must allege "enough factual matter" to show a prosecutor: (a) knowingly fabricated evidence, (b) that was used against the plaintiff at his/her criminal trial and (c) the fabrication was material enough to have caused a <u>wrongful conviction</u>. 682 F.3d at 586 (emphasis added). Emphasizing the need for a criminal conviction to state such a claim, the Seventh Circuit in *Whitlock* further observed: "Finally, and in some ways most importantly, these claims cannot be brought at all unless and until a criminal defendant is able to secure a dismissal or reversal of <u>his criminal conviction</u>. *Id.* (emphasis added).

Subsequently, the Seventh Circuit in *Alexander v. McKinney,* held *Whitlock* was inapplicable because the plaintiff in *McKinney* had not been convicted, and the only liberty deprivation the plaintiff allegedly suffered stemmed from the arrest. 692 F.3d at 557 (noting in *Whitlock* "the alleged liberty deprivation came not from the initial arrest, but from the time spent in confinement after arrest … the numerous years Whitlock and Steidl spent in prison after being wrongfully convicted"). *Id.* Here, none of the plaintiffs were convicted; in fact Salgado and McCleary had the charges against them dismissed before trial, which renders *Whitlock* inapposite.

Plaintiffs' only response to *McKinney* is to "respectfully disagree" with the Seventh Circuit's analysis. Response at 27. However, *McKinney's* analysis, with which the Plaintiffs disagree, is clearly

spelled out in *Whitlock,* and renders Plaintiffs' response meritless. *Whitlock* is simply inapplicable to Plaintiffs' due process claims.

3.    **Plaintiffs' Acquittal in the Underling Criminal Proceedings Precludes Any §1983 Claim Based on an Alleged *Brady* Violation.**

As outlined in McQueen's opening brief, Dkt. No. 216 at 20-22, Plaintiffs were either acquitted at trial, or had the criminal charges against them dismissed prior to trial, which precludes a §1983 claim based on a purported *Brady* violation. The Seventh Circuit has explained:

> A *Brady* violation can be broken down into three basic elements: (1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued—in other words "materiality."

*Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008).

*Carvajal* further noted that evidence is considered "'material' if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 567 (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)). *Carvajal* ultimately expressed doubt "that an acquitted defendant can ever establish the requisite prejudice for a *Brady* violation." 542 F.3d at 570. The court found *Strickler's* discussion of materiality particularly instructive:

> [T]he term "*Brady* violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called "*Brady* material"—although strictly speaking, there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

*Id.* (quoting *Strickler*, 527 U.S. at 290). In *Christman v. Hanrahan*, 500 F.2d 65, 68 (7th Cir. 1994), the Seventh Circuit also recognized: "If the *Brady* rule had been primarily intended to deter prosecutorial misconduct, rather than to insure fair trials, the materiality limitation would have been unnecessary."

*Christman* concluded that because "[t]he mission of the [due process] clause" is "the avoidance of an unfair trial to the accused" there can be no violation "unless the misconduct had some prejudicial impact on the defense." *Id.* at 67.

Because plaintiffs were either acquitted at trial or had the charges against them dismissed prior to trial, the allegedly withheld information is not "material" as a matter of law. Production of this information would not have resulted in a different outcome. *Id. See also Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (rejecting a §1983 *Brady* claim following a judgment of acquittal after trial; collecting cases; and explaining: "Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial."); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir.1998) (holding *Brady* is not implicated following an acquittal since *Brady* protects against an unfair trial and acquittal precludes any claim of an unfair trial); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) (holding dismissal of criminal charges prior to trial precludes claims involving the wrongful suppression of evidence because there was no injury caused by the suppression of exculpatory evidence).[4]

Plaintiffs erroneously suggest at page 26 of their Response that "[t]he Seventh Circuit has clearly rejected" this argument, and argue that a plaintiff can plead a *Brady* violation claim following an acquittal "by showing the decision to go to trial would have been altered by disclosure of the withheld evidence." Plaintiffs cite the Seventh Circuit's *McKinney* decision in support of their position. While the Seventh Circuit in *McKinney* noted that it had "entertained the possibility" of such a claim, it affirmed the dismissal of plaintiff's due process claim, and rejected the suggestion

---

[4]    Defendants also note the Seventh Circuit in *Mosley* held that when the state does not call a witness at trial, there is no obligation under *Brady* to turn over evidence that could impeach the witnesses' testimony. 614 F.3d at 399. In the absence of an allegation that a witness testified at trial, such as Sue Sedar, arguments that McQueen allegedly failed to produce statements from that witness do not even establish *Brady* was violated, and demonstrate that such an assertion is a conclusory allegation that need accepted as true when ruling on this pending motion.

that "the burden of appearing in court and attending trial, in and of itself constitute[d] a deprivation of liberty." 692 F.3d at 557 n.2, 558. If the burdens of attending trial do not violate due process, likewise the decision to proceed with an indictment or trial cannot violate due process.

Plaintiffs also cite *Mosley v. City of Chicago*, 614 F.3d 391 (7th Cir. 2010), in support of their argument. *Mosley* recognized "the logical tension inherent in claiming a *Brady* violation occurred when the predicate trial resulted in an acquittal," and that other circuits had concluded that an acquittal could "never lead to valid claim for a *Brady* violation." *Id.* at 397. Contrary to Plaintiff's suggestion, *Mosley* did not address whether such a claim would be recognized in this Circuit; *Mosley* passed on that issue, and then affirmed summary judgment for the defendants. *Id.* at 397-98, 400.

*Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012), also did not resolve the issue as Plaintiffs claim. Rather, the Seventh Circuit addressed the issue as alternative to its holding that a prosecutor enjoyed absolute immunity: "Assuming arguendo that Wharrie did not act prosecutorially," *Id.* at 516, and only then in the abstract: "<u>Assuming for the sake of argument</u>, that we answer this question affirmatively" *Id.* at 517 (emphasis added). Moreover, *Fields* reiterated "that fabricating evidence … in the form of testimony is not an actionable wrong." *Id.* at 516-17. The Seventh Circuit in *Fields* further explained "since Fields' retrial resulted in an acquittal and a certificate of innocence, suppressing the coercion might not be a *Brady* violation at all because, counterintuitively, it was not material." *Id.* 518 n.5.

Finally, the Seventh Circuit's decision in *Christman* bars Plaintiffs' putative *Brady* claim. The fact that other panels have "entertained the possibility" of such a claim does not lessen *Christman's* precedential authority.[5] *Christman* recognized that the purpose of *Brady* was to ensure a fair trial, and

---

[5]     One panel decision of the Seventh Circuit cannot implicitly overrule another panel decision. *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2004). Overruling Seventh Circuit precedent may only occur when the court has recognized the holding it wishes to supplant and has circulated its proposed decision to overrule to the entire court, pursuant to Seventh Circuit Rule 40(e). *Brooks*, 279 F.3d at 522; *Caine v. Burge*, 897 F.Supp.2d

not to serve as a check on alleged prosecutorial wrongdoing, so no §1983 *Brady* claim is available following plaintiffs' acquittal or dismissal of charges against them. Additionally, as noted in Section III-F of this Reply, the Supreme Court in *Albright* and *Gerstein* specifically rejected a right to judicial oversight or review of the decision to prosecute. *Albright* and *Gerstein*, therefore bar the recognition of such a due process claim, the central focus of which would be on the decision to prosecute. Plaintiffs' acquittal or the dismissal of the charges against them preclude any §1983 *Brady* claim and therefore plaintiffs' claims in Counts IV and V should be dismissed on this basis.

## C.    Plaintiffs Have No Viable Retaliatory Prosecution Claims.

Plaintiffs' retaliatory prosecution claims in Counts VI and VII fail for multiple reasons. As McQueen noted in his opening brief, constitutional rights are personal in nature and cannot be vicariously asserted, which warrants the dismissal of the claims brought by Synek, Salgado and McCleary. Indeed, the only assertion made in those counts are that the Defendants' acts were "intended to retaliate against Bianchi for engaging in protected activity and to prevent Bianchi from engaging in future protected activity" (Ex. A, ¶¶ 150, 155). Neither count contains any reference to Synek, Salgado or McCleary's First Amendment rights.

In response, Plaintiffs argue that they were prosecuted based upon their political association with Bianchi (Response at 30). However, this is Plaintiffs' third attempt to state a claim and they failed to include that allegation in their SAC, which warrants its dismissal. Even if the Court should overlook that pleading deficiency, Synek, Salgado and McCleary's claims would still not be actionable because they do not allege that McQueen was aware of their political affiliation, which is a

---

714, 719 (N.D. Ill. 2012)("[A District Court] cannot assume that a subsequent panel of the Seventh Circuit can overrule another panel implicitly. . . To overrule precedent of the Seventh Circuit requires a recognition by the panel of the previous decision or decisions to be overruled and circulation of the overruling decision to the full court pursuant to Circuit Rule 40(e).").

necessary element of any retaliation claim allegedly based on political affiliation. *See, e.g., Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996) (noting plaintiffs' First Amendment claims were properly dismissed because plaintiff failed to allege defendant knew of plaintiff's non-affiliation with the Democratic party).

Additionally, as explained above in Section IV of this Reply, Plaintiffs have not shown a connection between McQueen and Mr. Bianchi's political enemies, which should preclude any retaliation claim in this matter. Moreover, as explained in VI-A of this Reply, probable cause existed which is fatal to any retaliatory prosecution claim.

## VII.    ASSIGNMENT BARS STATE AND FEDERAL CLAIMS.

Plaintiffs do not, and indeed cannot, contest that Constitutional rights are personal in nature. *Ray v. Maher*, 662 F.3d 770, 773 (7th Cir. 2011) (a "bedrock principle of §1983 law" is the personal nature of a §1983 claim). Nor do Plaintiffs dispute that public policy in Illinois prohibits the assignment of tort claims for personal injuries and for other wrongs of a personal nature, involving the reputation or feelings of the injured party. *Kleinwort Benson N. Am., Inc. v. Quantum Fin. Servs., Inc.*, 181 Ill.2d 214, 225, 692 N.E.2d 269, 274 (1998).

Plaintiffs concede that they entered into a settlement agreement with McHenry County that provides that Bianchi and Synek "would reimburse McHenry County up to $275,000" for legal fees it contributed for Bianchi and Synek's defense in the underlying criminal prosecutions. Response p. 35. Plaintiffs suggest that this is not really an assignment because they were not required to file a §1983 suit and because McHenry County is not the named Plaintiff in this case. *Id.*

However, when determining if an assignment has occurred, this Court must look at what actually happened rather than the label that Plaintiffs attempt to attach to it. *Klehm v. Grecian Chalet, Ltd.*, 164 Ill.App.3d 610, 616, 518 N.E.2d 187, 190 (1st Dist. 1987) (explaining when determining if a

valid assignment was effectuated a court "looks to the substance and not the form"). An assignment occurs when "there is a transfer of some identifiable interest from the assignor to the assignee." *Id.* "Generally, no particular form of assignment is required; any document which sufficiently evidences the intent of the assignor to vest ownership of the subject matter of the assignment in the assignee is sufficient to effect an assignment." *Stoller v. Exchange National Bank of Chicago*, 199 Ill.App.3d 674, 681, 557 N.E.2d 438, 443 (1st Dist 1990). Therefore, a valid assignment "need only assign or transfer the whole or a part of some particular thing, debt, or chose in action and it must describe the subject matter of the assignment with sufficient particularity to render it capable of identification." *Klehm,* 164 Ill.App.3d at 616, 518 N.E.2d at 191.

Based upon the plain language of the agreement Plaintiffs entered into with McHenry County, they have assigned a portion of the recoverable proceeds from this action to McHenry County. If Plaintiffs recovered damages in this § 1983 action, and if they failed to remit a portion of those proceeds, up to $275,000 to McHenry County, the County would have a claim against Plaintiffs for those assigned proceeds. This is an assignment, plain and simple. Illinois law is well-settled that where, as here, a party has improperly attempted to assign an action that is personal in nature, the appropriate remedy is dismissal of the entire cause of action rather than merely voiding the illegal assignment. *Grimes v. Saikley*, 388 Ill.App.3d 802, 818, 904 N.E.2d 183, 196 (4th Dist. 2009). For the reasons explained in McQueen's opening brief, Bianchi's and Synek's §1983 claims should also be dismissed as well by virtue of their assignment with McHenry County.

## VIII. PLAINTIFFS' DEFAMATION CLAIMS ARE BARRED BY COMMON-LAW PRIVILEGE.

Plaintiffs have no answer for the common-law absolute privilege raised by McQueen in his opening brief. So once again, they respond with hyperbole claiming "[t]here is absolutely no case law supporting McQueen's position that it's part of a prosecutor's official duties to make false and

inflammatory statements at a press release and that a press conference regarding evidence that does not exist." That suggestion ignores the appellate court's decision in *Ware v. Carey*, 75 Ill. App. 3d 906 (1st Dist. 1979), cited in McQueen's opening brief, which involved a press release issued by then State's Attorney Bernard Carey. The plaintiff in *Ware* claimed the defendant made a false and defamatory statement about a deputy superintendent of the Chicago Police Department covering up corruption in his department. 75 Ill. App. 3d at 909. The plaintiff in *Ware* essentially made the same allegations as Plaintiffs make in the case at bar. Accordingly, Plaintiffs' are wrong when they suggest that there is no authority supporting McQueen's argument on this issue. Since a State's Attorney enjoys an absolute privilege under the Illinois common-law against defamation liability for allegedly making knowingly false statements, McQueen enjoys that same privilege because he steps into the shoes of the elected State's Attorney by virtue of his appointment as a special prosecutor.

Plaintiffs argue the Supreme Court's *Buckley* decision in opposition to the assertion of the absolute common-law privilege available under Illinois law. *Buckley* is inapposite for several reasons. First, *Buckley* addressed the availability of absolute immunity to a §1983 constitutional claim. Additionally, defamation does not violate the Constitution. So *Buckley* is inapplicable to the common-law defenses available to a state-law defamation claim.

Finally, Plaintiffs suggest that the press release allegedly violated Rule 3.8 of the Illinois Rules of Professional Conduct. Plaintiffs' argument borders on frivolity. Rule 3.8(f) permits a prosecutor to make a statement that informs the public of the nature and extent of the prosecutor's action that served a legitimate law enforcement purpose. A press release, regarding the indictment of a public official is permitted under that rule. Indeed, Comment 5 to Rule 3.8 recognizes that announcement of indictments serve a legitimate law enforcement purpose. Consequently, Plaintiffs' argument concerning Rule 3.8 is utterly baseless and provides no basis to deny dismissal of Plaintiffs' defamation claims.

## IX. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED PURSUANT TO EITHER COMMON-LAW PROSECUTORIAL IMMUNITY LAW OR STATE SOVEREIGN IMMUNITY.

McQueen stands on the arguments made in his opening brief on the availability of absolute immunity to Plaintiffs' state-law claims, because Plaintiffs' four line argument requires no reply.

State sovereign immunity further requires Plaintiffs' state-law claims be pursued in the Court of Claims – not in the Northern District of Illinois. Plaintiffs suggest that we have failed to articulate any reason not to follow the *Rodriquez* decision, which was acknowledged in McQueen's opening brief. Plaintiffs overlook that point made in the opening brief that *Rodriquez* rests it holding on a decision having nothing to do with sovereign immunity and does not reflect a proper respect for state sovereignty outlined in the Supreme Court in its *Pennhurst* decision. Additionally, in *Brooks v. Ross*, the Seventh Circuit affirmed the dismissal of a malicious prosecution claim on state sovereign immunity grounds. Because Plaintiffs ignore these points in their Response, no further argument is required.

For the reasons outlined in McQueen's opening brief and those addressed above, Plaintiffs' claims against him should be dismissed in their entirety.

Dated: July 9, 2013

Respectfully submitted,

By:     /s/ Steven M. Puiszis
        One of the Attorneys for Defendant,
        THOMAS K. McQUEEN

Steven M. Puiszis
Matthew J. Henderson
Starr M. Rayford
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL  60601-1081
(312) 704-3000
spuiszis@hinshawlaw.com